610 So.2d 460 (1992)
Katie D. TUCKER, Petitioner,
v.
Donald George RESHA, Jr., Respondent.
No. 92-1744.
District Court of Appeal of Florida, First District.
October 12, 1992.
On Motion for Rehearing and Certification December 30, 1992.
*461 Brian S. Duffy, McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for petitioner.
Richard E. Johnson, Spriggs & Johnson, and William A. Friedlander, Tallahassee, for respondent.
PER CURIAM.
Tucker, the defendant below, petitioned for a writ of common-law certiorari for review of the trial court's order denying Tucker's motion for summary judgment as to Counts IV and VII of respondent Resha's amended and supplemental complaint. As the basis for invoking jurisdiction pursuant to article V, section 4(b), Florida Constitution, and Fla.R.App.P. 9.030(b)(3), Petitioner maintained the trial court's order fulfills the two prerequisites for review by certiorari because 1) it is a departure from the essential requirements of law that will cause material injury to Petitioner throughout the subsequent proceedings below, and 2) a full and adequate remedy by appeal after final judgment is unavailable. See Brooks v. Owens, 97 So.2d 693, 695 (Fla. 1957); Harte v. Palm Beach Biltmore Condominium Ass'n, 436 So.2d 444, 445 (Fla. 4th DCA 1983); Boucher v. Pure Oil Co., 101 So.2d 408, 410 (Fla. 1st DCA 1957). As a former public official, Tucker also asserted a substantive federal right not to stand trial, a right established by the United States Supreme Court in Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Although Tucker's claim of qualified immunity from suit involves a type of protection that cannot be effectively or adequately restored by an appeal, once it is lost by exposure to trial, see Flinn v. Gordon, 775 F.2d 1551, 1552 (11th Cir.1985), cert. den., 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986), we decline to exercise our limited and discretionary jurisdiction because the order *462 does not violate a clearly established principle of law or otherwise depart from the essential requirements of law resulting in a miscarriage of justice. See Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla. 1987); Combs v. State, 436 So.2d 93 (Fla. 1983); Chalfonte Devel. Corp. v. Beaudoin, 370 So.2d 58 (Fla. 4th DCA 1979). In contrast with the federal procedural entitlement to interlocutory review of non-final orders denying summary judgment based on qualified immunity, see Mitchell, the applicable Florida laws governing certiorari jurisdiction over non-final orders afford a much narrower scope of relief. Accordingly, the petition for writ of certiorari is denied.
During the time period at issue, Petitioner was Executive Director of the Florida Department of Revenue ("DOR"). Tucker asserted a claim of qualified immunity, which shields from civil liability those governmental officials performing discretionary functions, to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); Green v. Brantley, 941 F.2d 1146, 1148 (11th Cir.1991). Tucker contended that the federal presumptive right not to stand trial or to face the other burdens of litigation established in Harlow and Mitchell affords her the opportunity for immediate review of the non-final order denying summary judgment. See Felder v. Casey, 487 U.S. 131, 151, 108 S.Ct. 2302, 2313-14, 101 L.Ed.2d 123, 146 (1988) (state courts are required under Supremacy Clause to proceed in a manner that protects the substantial federal rights of the parties).

A. FEDERAL RIGHT OF INTERLOCUTORY REVIEW OF NON-FINAL ORDERS
Counts IV and VII involved claims of deprivation of civil rights based on 42 U.S.C., section 1983. Tucker asserted the claim of qualified immunity to support the motion for summary judgment on both counts. The petition relied in large measure on the established federal appellate mechanism for interlocutory review of orders denying summary judgment on the issue of qualified immunity. 42 U.S.C., section 1983, does not address the right of interlocutory review of such non-final orders, but 28 U.S.C., section 1291, provides in part: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States." Federal appellate courts construing section 1291 have held that to the extent a federal trial court's denial of a qualified immunity claim on a motion for summary judgment turns on an issue of law, the order is considered an appealable "final decision," notwithstanding the absence of a final judgment. See Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817, 86 L.Ed.2d at 427; Wyatt v. Cole, 504 U.S. ___, 112 S.Ct. 1827, 1832, 118 L.Ed.2d 504 (1992); Rich v. Dollar, 841 F.2d 1558, 1560 (11th Cir.1988).
A thorough review of the applicable state appellate procedural rules has convinced us that Florida does not have a rule analogous to 28 U.S.C., section 1291. Fla.R.App.P. 9.130(g) provides that the rule "shall not preclude initial review of a non-final order on appeal from the final order in the cause." However, because the entitlement asserted by Tucker is immunity from the burden of trial, review following the final order would not afford effective relief. Mitchell; Williams v. City of Albany, 936 F.2d 1256, 1258 (11th Cir.1991). Our independent research corroborates Petitioner's assertion that no other Florida opinion has directly addressed interlocutory review of an order denying summary judgment based on a claim of qualified immunity. Cf. Huffman v. Davis, 571 So.2d 1371 (Fla. 1st DCA 1990) (appellate review of order granting summary judgment in favor of correctional employee in inmate's section 1983 action).
In urging us to expand the scope of interlocutory review of non-final orders in accordance with the principles enunciated in Mitchell and Harlow, Petitioner relied on the merely persuasive authority of the courts of other states that have fashioned relief for civil-rights defendants seeking review *463 prior to trial where qualified immunity defenses were denied. See, e.g., McLin v. Trimble, 795 P.2d 1035 (Okl. 1990) (determining Mitchell was mandate to state courts, but stating the Supremacy Clause did not create state appellate court jurisdiction absent another jurisdictional basis, with result that exercise of original jurisdiction was proper); Henke v. Superior Court, 161 Ariz. 96, 775 P.2d 1160 (Ct.App. 1989) (although denial of motion to dismiss was non-appealable interlocutory order, jurisdictional relief was granted under the "unusual step" of a special-action petition); Anderson v. City of Hopkins, 393 N.W.2d 363 (Minn. 1986) (finding Mitchell analysis to be persuasive, "well-reasoned case that ought to be followed in analogous cases" interpreting state appellate procedural rule, without deciding whether federal decisions and state rule guaranteed right of pretrial appeal of order denying claim that 42 U.S.C., section 1983, suit should be dismissed) (emphasis in original).
Although the cited decisional law of other states is instructive on this issue, we note that the results are by no means uniform for civil-rights defendants claiming qualified immunity. See Henke, 775 P.2d at 1164 n. 5. Some courts have followed the federal example and granted immediate review of non-final orders because appellate review would be futile. See Breault v. Chairman of Bd. of Fire Comm'nrs of Springfield, 401 Mass. 26, 513 N.E.2d 1277, cert. den., 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 237 (1987); Anderson. Others have denied relief based on the strict application of state appellate rules excluding such non-final orders from interlocutory review. See Klindtworth v. Burkett, 477 N.W.2d 176 (N.D. 1991); Pizzato's, Inc. v. City of Berwyn, 168 Ill. App.3d 796, 119 Ill.Dec. 583, 523 N.E.2d 51 (1988); Noyola v. Flores, 740 S.W.2d 493 (Tex. Ct. App. 1987). A third line of decisions afforded yet other avenues than certiorari relief for immediate review. See McLin; Henke.
Under Florida rules, however, an order denying a motion for summary judgment is not an appealable final order. Aetna Casualty & Surety Co. v. Meyer, 385 So.2d 10, 11 (Fla. 3d DCA 1980). Although Fla.R.App.P. 9.030(b)(1) provides for appellate jurisdiction over "non-final orders of circuit courts as prescribed by Rule 9.130," an order denying a motion for summary judgment is not among those non-final orders reviewable pursuant to Rule 9.130. In the absence of an analogous Florida appellate procedural rule, we decline the opportunity to apply the federal procedure affording interlocutory review of the non-final order merely because a qualified immunity claim is involved.
The constitutional law of Florida defines the jurisdictional limits of the district courts of appeal. See Fla. Const. art. V § 4(b). Although we may take notice of Mitchell and its progeny in interpreting the jurisdictional provisions governing this court, Florida law must control. See Klindtworth, 477 N.W.2d at 181 (dismissing interlocutory appeal from order denying summary judgment on qualified immunity claim in section 1983 suit, where state appellate procedural rules provided no jurisdictional basis and court rejected argument that "special nature of immunity defense" justified immediate relief). As we noted in Gadsden County Times, Inc. v. Horne, 382 So.2d 347, 348 (1st DCA), pet. for rev. den., 389 So.2d 1109 (Fla. 1980), the "jurisdictional vehicle" in the Mitchell line of decisions was not certiorari, but rather, the interlocutory appeal provision in the federal rules. We find no merit to Petitioner's argument that federal statutory and decisional law has created new state procedural law in Florida, which would in effect entitle Tucker to appeal the non-final order from the decision denying summary judgment. See Ohio Civil Service Employees Association v. Moritz, 39 Ohio App.3d 132, 529 N.E.2d 1290, 1291 (Ct.App. 1987). As to matters of practice and procedure, the governing Florida appellate rules provide otherwise and do not afford the type of relief provided in the federal courts pursuant to federal procedural rules. See Noyola, 740 S.W.2d at 493.

B. ORIGINAL JURISDICTION: COMMON-LAW CERTIORARI
We adhere to the maxim that common-law certiorari is not to be used to *464 sidestep the rule of law narrowly restricting those non-final orders subject to review. See Witten v. Howard Vernon Lodges and Restaurants, Inc., 169 So.2d 531, 532 (Fla. 1st DCA 1964); Marlowe v. Ferreira, 211 So.2d 228 (Fla. 2d DCA 1968) (acknowledging discretionary nature of writ available "only in exceptional cases"). Rule 9.130(a)(1) provides that review of non-final orders other than those listed is to be by the method prescribed in Rule 9.100, which expressly refers, in pertinent part, to the jurisdictional rules governing certiorari jurisdiction over "non-final orders of lower tribunals other than as prescribed by Rule 9.130," see Rule 9.030(b)(2)(A), and original jurisdiction for issuance of a writ of common-law certiorari like the one requested herein. See Rule 9.030(b)(3).
Absent a showing of fundamental error or "exceptional circumstances," certiorari is seldom granted to quash an interlocutory order. Crocker Construction Co. v. Hornsby, 562 So.2d 842 (Fla. 4th DCA 1990); Boucher; Vanco Constr. Co. v. Nucor Corp., 378 So.2d 116 (Fla. 5th DCA 1980). The Florida Supreme Court has ruled that a non-final order, like the present one not reviewable under Rule 9.130, is subject to review "only in limited circumstances." See Savage; Hawaiian Inn of Daytona Beach, Inc. v. Snead Constr. Co., 393 So.2d 1201 (Fla. 5th DCA 1981) (fact that no immediate remedy by appeal from non-final order was available did not of itself indicate common-law certiorari was available); Meckler v. Hecht Rubber Corp., 190 So.2d 186 (Fla. 1st DCA 1966) (denying certiorari to review order setting aside final summary judgment). Orders denying summary judgment "are particularly unlikely to be reviewed by certiorari." Haddad, "The Common Law Writ of Certiorari in Florida," 24 U.Fla.L.Rev. 207, 223 (1977). Petitioner must demonstrate the trial court's order satisfies both prongs of the certiorari test enunciated by the Florida Supreme Court in Brooks, 97 So.2d at 693.

1. ADEQUACY OF APPELLATE REMEDY
In Mitchell, the United States Supreme Court said the entitlement provided under the doctrine of qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815, 86 L.Ed.2d at 425; Green. We agree, and find the order sub judice to be analogous to certain non-final orders permitting discovery. See, e.g., Boucher, 101 So.2d at 408 (granting writ and quashing trial court's order requiring answers to defendant's interrogatories); Procter & Gamble Co. v. Swilley, 462 So.2d 1188 (Fla. 1st DCA 1985) (granting certiorari and quashing order in part, relating to required discovery of research documents in defendants' possession claimed as work product). Because of the nature and purpose of the claim of qualified immunity, an appeal after final judgment would hardly constitute a full and adequate remedy, for once the protection of immunity is lost and trial ensues, there is no means of re-immunizing the party. See Mitchell; Procter & Gamble; Henke, 775 P.2d at 1163.

2. DEPARTURE FROM ESSENTIAL REQUIREMENTS OF LAW
Petitioner demonstrated the inadequacy of appellate review because the claim of qualified immunity contemplates protection from the risk of trial itself. Harlow. To determine whether the trial court's order meets the second requirement set forth in Brooks and Harte, we must address the question enunciated in Mitchell and applicable to orders denying summary judgment based on a qualified immunity claim: "whether the legal norms allegedly violated by [Tucker] were clearly established at the time of the challenged actions." Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816, 86 L.Ed.2d at 426; Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1504 (11th Cir.1990). The "objective reasonableness of an official's conduct" relating to the clearly established law is the proper standard, for "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the *465 law governing his conduct." Harlow, 457 U.S. at 818-19, 102 S.Ct. at 2738, 73 L.Ed.2d at 411. Until the "threshold question of immunity" is resolved, the public official should not bear the burden of any additional costs of litigation. Harlow; Moritz, 529 N.E.2d at 1292. To establish the good faith defense, a defendant must show that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983). We must construe the facts in the light most favorable to Resha as the non-moving party. Rakovich v. Wade, 850 F.2d 1180, 1204-05 (7th Cir.), cert. den., 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); see McDaniel v. Woodard, 886 F.2d 311, 313 (11th Cir.1989) (review of qualified immunity claim involves assumption that facts are as plaintiff alleged them); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir.1987).

Count IV
Paragraphs 34 and 35 of Resha's amended complaint allege a violation of his First Amendment rights by Tucker:
34. The actions of KATIE TUCKER as described herein were undertaken intentionally, willfully and maliciously under color of state law, and in an effort to drive Plaintiff DONALD RESHA out of the 1989 race for president of the AFL-CIO in Florida, for retaliating against him for having been a candidate in the past, and for the further purpose of destroying his viability as a candidate to compete against TUCKER'S husband in all future elections.
35. The First Amendment to the Constitution of the United States of America provides DONALD RESHA and all others with certain inalienable rights, including without limitation, the right to associate with others by seeking a union office to represent other workers, to free speech, and to support public and union officials of his choosing.
In support of her position, Tucker stated in an affidavit that, as DOR Executive Director from June 1988 to February 1990, she "had full discretionary authority to order tax investigations and audits of persons subject to tax liability under the laws of Florida, and this authority was part of the normal duties delegated to the Executive Director pursuant to chapter 213 of the Florida Statutes." Tucker asserted that the successful result of DOR's tax audit demonstrated the legitimacy of the effort undertaken. Resha conceded the audit showed he had failed to pay about $300 of a total tax amounting to more than $30,000.
"Once the defendant establishes his good faith, the burden shifts to the plaintiff to show lack of good faith." See Saldana v. Garza, 684 F.2d 1159, 1163 (5th Cir.1982), cert. den., 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983); Zeigler, 716 F.2d at 849. The Court in Mitchell stated: "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." Id. 472 U.S. at 526, 105 S.Ct. at 2815, 86 L.Ed.2d at 425; Rich, 841 F.2d at 1563 & n. 4. These questions of law are subject to de novo review. Horlock v. Georgia Dep't of Human Resources, 890 F.2d 388, 394 (11th Cir.1989); Rich.
Although the trial court in its order did not explain the basis of the denial of summary judgment, the order "contains the implicit determination that [Respondent] has presented a claim for which the law ordinarily provides relief; otherwise, [Petitioner] would be necessarily immune because [the] conduct could not have violated clearly established law." Bennett v. Parker, 898 F.2d 1530, 1536 (11th Cir.1990) (Tjoflat, C.J., concurring), cert. den., ___ U.S. ___, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). Tucker's answer to Resha's amended complaint admitted Paragraph 35. Tucker essentially admitted that Resha's seeking a union office is a clearly established, constitutionally protected activity under Mitchell and Harlow. Our independent research has disclosed ample decisional authority to show the First Amendment guarantees of free speech and association *466 include the protection of an individual's right to join and participate in a labor union. See Brown v. United States, 334 F.2d 488 (9th Cir.1964), affirmed, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965) (statute making it unlawful for Communist Party member to hold labor union office constituted invalid restraint upon First Amendment right of freedom of association); Florida AFL-CIO v. State of Fla. Dep't of Lab. & Emp. Sec'ty, 676 F.2d 513, 516 (11th Cir.1982); Healy v. Town of Pembroke Park, 643 F. Supp. 1208, 1212 (S.D.Fla. 1986), reversed on other grounds, 831 F.2d 989 (11th Cir.1987). Cf. Flinn, 775 F.2d at 1551, 1554 (acknowledging constitutional right to run for public office and hold office once elected). After reviewing the evidence before the trial court, we find unpersuasive Petitioner's argument that the evidentiary provisions of Landers v. Milton, 370 So.2d 368, 370 (Fla. 1979), and Harvey Bldg., Inc. v. Haley, 175 So.2d 780, 782-83 (Fla. 1965), afford a basis for certiorari relief. Respondent carried his burden under the purely objective Harlow test for demonstrating a clearly established First Amendment right of which a reasonable person would have known at the time of the alleged unlawful acts. See James v. City of Douglas, Georgia, 941 F.2d 1539 (11th Cir.1991); Flinn, 775 F.2d at 1553-54.
The issue of alleged retaliatory state conduct against First Amendment rights was present in Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977), which provides that the party retaliated against must show the constitutionally protected conduct was at least a "motivating factor" in the official's retaliatory response. Resha alleged Tucker knew about the prior political encounters involving her husband and Resha, undertook to protect and assist her husband as a prospective candidate, and in so doing "set out to destroy" Resha's reputation and businesses. See Amended Complaint, Paragraphs 7, 20 and 34. Having carefully reviewed Resha's amended complaint, as well as Tucker's answer, affidavit, and motion for summary judgment, and all factual inferences in the light most favorable to Respondent as the non-moving party, we find a genuine factual issue exists regarding Tucker's conduct, so as to preclude a grant of summary judgment based on qualified immunity. See Hansen v. White, 947 F.2d 1378 (9th Cir.1991) (de novo review of grant of summary judgment and determination, viewing evidence in light most favorable to non-movants, whether genuine material fact issues existed and whether trial court correctly applied substantive law); Williams, 936 F.2d at 1259; Goddard v. Urrea, 847 F.2d 765, 767 & 769 (11th Cir.1988); Rich, 841 F.2d at 1565; Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977). The trial court's order denying the motion on Count IV did not depart from the essential requirements of law. See Fla.R.Civ.P. 1.510(c) (summary judgment). See Brisk v. City of Miami Beach, Florida, 726 F. Supp. 1305, 1310 (S.D.Fla. 1989) (qualified immunity issue relating to "clearly established law" is question of law, but where material facts are disputed, the issue of whether a reasonable official would have deemed the defendant's conduct lawful is a question for the jury).

Count VII
This count alleged a civil rights cover-up. The pertinent sections of the amended complaint alleged:
47. When Defendant, KATIE TUCKER, learned that her actions as described above may expose her to the loss of her job and to money damages as the result of this lawsuit, KATIE TUCKER, engaged in a cover-up in order to deprive Plaintiff of his right to access to courts and to further support and aggravate her previous slander and other tortious and unwarranted conduct against Plaintiff.
48. Particularly, on or about January 31, 1990, Defendant, KATIE TUCKER, went to her office and fraudulently prepared documents, back dating them, and then distributing them, in an effort to create an after-the-fact paper trail that would have justified her initial actions *467 had these documents in fact existed at the time of the dates thereon.
49. The actions of TUCKER, as described in the preceding paragraph, were done and taken under color of state law and with the intent to cover up Defendant's previous violations of Plaintiff's constitutional rights.
In Tucker's answer and deposition, the allegations in Count VII were denied. Interpreting Ryland v. Shapiro, 708 F.2d 967, 974-75 (5th Cir.1983), the Fifth Circuit Court stated:
[I]f state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled, they may have committed a constitutional violation.
Crowder v. Sinyard, 884 F.2d 804, 812 (5th Cir.1989), cert. den., 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). Resha's allegations made the prerequisite showing required under Ryland, Crowder, and Bell v. City of Milwaukee, 746 F.2d 1205, 1260-61 (7th Cir.1984).
We find a genuine issue of material fact exists concerning whether the cover-up occurred, and hold the order denying summary judgment on Count VII did not depart from the essential requirements of law. Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815, 86 L.Ed.2d at 425; Horlock, 890 F.2d at 394 & n. 3; Harris v. Dugger, 757 F. Supp. 1359, 1361 (S.D.Fla. 1991) (Under stringent burden involved in motion for summary judgment, "any doubt as to the existence of a genuine issue for trial should be resolved against the moving party.") Although the common-law writ of certiorari is "essentially a writ of review," see Haddad at 207, we emphasize that the scope of our review here is discretionary and very limited, compared to that of appellate review. See Combs, 436 So.2d at 95-96. Because common-law certiorari is in no sense a substitute for an appeal, we note that the present denial of the petition is not necessarily indicative of how we would dispose of the matter were it to be appealed from judgment. See Harte, 436 So.2d at 446; Keay v. City of Coral Gables, 236 So.2d 133, 135 (Fla. 3d DCA 1970).
The Petition for Writ of Common-Law Certiorari is DENIED.
BOOTH, SHIVERS and BARFIELD, JJ., concur.

ON MOTION FOR REHEARING AND CERTIFICATION
PER CURIAM.
Petitioner Tucker's motion for rehearing is denied, but we certify the following question as one of great public importance:
IS A PUBLIC OFFICIAL ASSERTING QUALIFIED IMMUNITY AS A DEFENSE TO A FEDERAL CIVIL RIGHTS CLAIM ENTITLED IN THE FLORIDA COURTS TO THE SAME STANDARD OF REVIEW OF DENIAL OF HER MOTION FOR SUMMARY JUDGMENT AS IS AVAILABLE IN THE FEDERAL COURTS?
BOOTH, SHIVERS and BARFIELD, JJ., concur.